FILED
11/20/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2017 Session

## ESTATE OF BONNIE C. BRIMER v. BERNICE HENNESSEE ET AL.

**Appeal from the Chancery Court for Morgan County**
**No. 14-08     Frank V. Williams, III, Chancellor**

_____

## No. E2016-02136-COA-R3-CV
_____

Summary judgment was granted to the defendant in an action brought by the executrix of an estate to declare the rights of the parties to joint bank accounts created by the decedent. The executrix appeals the grant of summary judgment. We conclude that there is a genuine issue of material fact as to whether the decedent was unduly influenced and accordingly reverse the judgment and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN WESLEY MCCLARTY, J., joined.

Harold C. Wimberly, Knoxville, Tennessee, for the appellant, Judy F. Hutson.

James W. Brooks, Wartburg, Tennessee, for the appellee, Bernice Hennessee.

**OPINION**

### I. FACTUAL AND PROCEDURAL HISTORY

Bonnie C. Brimer, a resident of Morgan County, died on January 30, 2013, at the age of 85. Her will, executed in August 2005, was admitted to probate, and letters testamentary were issued to her sister, Judy Hutson, on February 14, 2013.

Several years prior to her death, Ms. Brimer created two accounts at Regions Bank that were titled in her name and in the name of her friend Bernice Hennessee; the accounts were established as joint accounts with the right of survivorship. Account 4071 was opened at the Wartburg, Tennessee, branch in 2007, and account 7379 was opened at

the Amite, Louisiana, branch in 2009; at some point after Ms. Brimer's death, Ms. Hennessee closed the accounts.[1]

On January 22, 2014, Ms. Hutson filed a petition for declaratory and injunctive relief, naming Bernice Hennessee and Geralynn Melancon as defendants, and seeking to have the court declare the rights of the parties with regard to the accounts and safe deposit boxes. The petition alleged that "the Deceased suffered from dementia and was under the influence of medications that impacted her competency with regard to the titling of" the bank accounts. The petition further alleged that "all of the funds in the above-referenced accounts originated from the Deceased, Bonnie C. Brimer, and that the Respondents did not contribute to any of the funds in the accounts. . ." and "that Respondents unduly influenced Decedent to add Respondents' names to the title of the above-referenced accounts, or that the Decedent lacked the requisite mental capacity to transfer title to the funds existing in the above-referenced accounts of the Deceased. . ."

Ms. Hennessee moved for summary judgment, asserting that that the undisputed facts "show that there was no fraud, no undue influence or overreaching by [Ms. Hennessee] when the joint accounts were established." The motion was supported by a statement of eight undisputed material facts; the facts were supported by citations to the order admitting Ms. Brimer's will to probate, the letters testamentary, the signature card from the Wartburg account 4071, a document entitled "Account Package" from the Amite account, Ms. Hutson's answers to interrogatories and deposition, and the deposition of Ms. Hennessee. Ms. Hutson responded to the statement, disputing six of the statements, citing to her interrogatory answers and deposition.

Following a hearing, the court entered an order granting the motion. The court held that "the Plaintiff has failed to produce any evidence to support her claim that the Defendant, Bernice Hennessee, unduly influenced Bonnie C. Brimer at the time these bank accounts at Regions Bank were established." The court also held that Tennessee Code Annotated sections 45-2-703(d)(1)(A) and (e)(1)[2] controlled, and because Ms.

---

[1] Ms. Brimer also procured safe deposit boxes at each of these Regions Bank branches. The box at the Wartburg branch was established in her name and that of Ms. Hennessee; the Amite box was listed in her name and in the name of Ms. Geralynn Melancon, whose relationship to Ms. Brimer is not apparent from the record. Ms. Hutson voluntarily dismissed Ms. Melancon from the case, and no issue is raised in this appeal with respect to the contents of the safe deposit boxes.

[2] Those statutory provisions read:

> (d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents that enable the depositor to designate ownership interest therein in terms substantially similar to the following:
>
> (A) Joint tenants with right of survivorship;
> ***

2

Brimer and Ms. Hennessee "held the accounts as joint tenants with right of survivorship which is conclusive evidence in this case of the intent to establish the bank accounts at Regions Bank such that title vested in the survivor."

Ms. Hutson appeals, raising the following issues for our review:

1. Whether the trial court erred in finding that Appellant failed to produce any evidence to support her claim that Defendant/Appellee unduly influenced Bonnie C. Brimer at the time the Regions Bank accounts were established.

2. Whether the trial court erred in finding that there was not an issue of material fact as to whether the mortgage payments being paid to Ms. Brimer that were deposited into one or more of the Regions Bank accounts after Ms. Brimer's death on January 30, 2013 were part of Ms. Brimer's probate estate and were thus improperly converted by Defendant/Appellee for her use and benefit.

Ms. Hennessee raises an additional issue as follows: "Can the Appellant raise a claim to post-death deposits of funds into a joint bank account of the decedent and Appellee for the first time on appeal?"

## II. STANDARD OF REVIEW

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence is insufficient to establish the nonmoving party's claim or defense. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015), *cert. denied*, 136 S.Ct. 2452 (2016). Where the motion is properly supported, the nonmoving party must respond by showing specific facts demonstrating a genuine issue of material fact for trial. *Id*. at 265. A fact is material if it must be decided in order to resolve the substantive claim or defense to which the motion is directed. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d at 251 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A

---

(e) Accounts described in subsection (c) shall establish the following interests:
    (1) A designation of joint tenants with right of survivorship, or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

Tenn. Code Ann. § 45-2-703.

3

"genuine issue" exists if a reasonable jury could resolve that fact in favor of one side or the other. *Id.*

We review the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye*, 477 S.W.3d at 250. We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor and discarding all countervailing evidence. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

## III. ANALYSIS

Ms. Hutson's petition alleged that Ms. Brimer's mental capacity at the time she created the bank accounts was diminished because she "suffered from dementia and was under the influence of medications that impacted her competency." At the hearing on the motion, counsel for Ms. Hutson conceded that "we have not come forward with any proof about diminished capacity" but argued that "the genuine issue [. . . of] material fact definitely exists as to undue influence[.]" The trial court did not discuss the evidence relied upon by the parties in support of their respective contentions or make factual findings; the court held that there was no issue of material fact as to the issue of undue influence and, applying Tennessee Code Annotated section 45-2-703(d)(1)(A) and (e)(1), granted summary judgment to Ms. Hennessee.

Citing to her interrogatory answers and deposition, as well as that of Ms. Hennessee, Ms. Hutson argues that an issue of fact as to undue influence was created because the evidence shows that Ms. Hennessee "had told Ms. Brimer that [Ms. Hennessee] would never have personal access to the monies in said accounts after Ms. Brimer's death and that said monies would be turned over to Ms. Brimer's heirs at law and/or beneficiaries upon Ms. Brimer's death." Upon our thorough review of the record, and applying the appropriate standard of review, we have determined that a genuine issue of material fact relative to the claim of undue influence exists and, accordingly, reverse the judgment and remand the case for further proceedings.

The law in Tennessee holds that, "where there is a 'confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction.'" *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002) (quoting *Matlock v. Simpson,* 902 S.W.2d 384, 386 (Tenn. 1995)). "A confidential relationship is any relationship which gives one person dominion and control over another." *Childress,* 74 S.W.3d at 328 (citing *Mitchell v. Smith,* 779 S.W.2d 384, 389 (Tenn. Ct. App.1989)). We have further explained the doctrine as follows:

4

The underlying theory of the doctrine of undue influence is that the donor was induced by various means to execute an instrument that, in reality, was the will of another substituted for that of the donor. Undue influence "consists of exerting enough influence or pressure to break down a person's will power and to overcome a person's free agency or free will so that the person is unable to keep from doing what he or she would not otherwise have done." "Courts should exercise the utmost care and caution before concluding that the solemn act of a decedent, such as execution of a deed or will, should be invalidated; but, it is equally important that they be vigilant to prevent imposition upon those who are weak, frail, and vulnerable to the influence and importunities of others who exercise a dominant position over them."

. . . A confidential relationship is any relationship that gives one person dominion and control over another. There are two sources of confidential relationships: (1) legal confidential relationships, and (2) family and other relationships. A normal family relationship between a parent and an adult child, standing alone, does not give rise to a confidential relationship. Family and other relationships are not considered confidential relationships unless there is proof of domination and control. In that situation, the issue of whether a confidential relationship arose is a question of fact. Legal confidential relationships, on the other hand, are confidential *per se* because of the legal status of the parties. For example, a confidential relationship arises as a matter of law when the dominant party has been granted an unrestricted power of attorney.

*Thompson v. Thompson*, No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *9 (Tenn. Ct. App. Mar. 12, 2009) (internal citations omitted). In undue influence cases, the question for us "is not whether the weaker party's decision was a good one, or even whether he knew what he was doing at the time[]"; [i]nstead, we must determine "whether the weaker party's decision was a free and independent one or whether it was induced by the dominant party." *In re Estate of Reynolds,* No. W2006-01076-COA-R3-CV, 2007 WL 2597623, at *8 (Tenn. Ct. App. Sept. 11, 2007) (quoting *Williamson v. Upchurch,* 768 S.W.2d 265, 270 (Tenn. Ct. App. 1988)).

We have reviewed Ms. Hennessee's statement of undisputed facts and have determined that Paragraph 7 is pertinent to the claim of undue influence; that statement reads: "Bernice Hennessee did not influence Bonnie C. Brimer to add her name to the title of account number [4071] at Regions Bank. Exhibit '5,' '6,' and '7' attached hereto. [Specific citations in these exhibits omitted]."

The citation to Exhibit 5 contains Ms. Hutson's answer to the following interrogatory propounded by Ms. Hennessee:

9. Describe in detail the factual basis of your allegation that the Defendant, Bernice Hennessee, unduly influenced Bonnie Brimer to establish joint bank accounts at Regions Bank with Bernice Hennessee.

ANSWER: After Ms. Brimer's husband died, Ms. Brimer did not know a lot about finances and usually had someone else on her account to help her with her finances. At the time the joint accounts at Regions Bank were created, Ms. Hennessee induced Bonnie Brimer to create said joint accounts by promising Bonnie Brimer, Victor Ed Clark and myself that the money in those accounts did not belong to Ms. Hennessee and that if Bonnie Brimer passed away Ms. Hennessee would return any money in said joint accounts to myself and Victor Ed Clark.

The citation to Exhibit 6 contains the following testimony from the deposition of Ms. Hutson:

Q. Moving forward to Exhibit 6, which is for account 7379. I believe it was established on June 19 of 2009, about eight days later.
A. I don't know anything about this one either.
***
Q. Do you believe anyone influenced her to set that up as a joint account with Bernice Hennessee?
A. No.

The citation to Exhibit 7 contains the portion of Ms. Hennessee's deposition where she testified that she did not go to the Amite, Louisiana, bank branch or sign a signature card to establish the account at that bank. The citation also includes the following testimony pertaining to the account at the Wartburg branch:

Q. Do you recall when you put your name -- you put your name on that account?
A. I believe it was in late August. Let me see. Lord, I can't remember. I put my name on there August 20th, 2007.
Q. Now, did -- did you suggest to Ms. Brimer that you put your name on there?
A. No, I did not.
Q. Okay. Well, how did that come about?
A. She called me one morning, which wasn't unusual, and she was crying. And she said, "Can you come down here?" And I said, "Yeah. I'll be right there." Because a lot of times, I just went however I looked. She said, "No, wait a minute. I want you to go to the bank for me -- with me." And I said, "Oh, okay. I'll change clothes right quick." And when I went in, she was crying thereon that back porch, that little sitting room. And she said, "I

6

need you to go to the bank with me." And I said, "Okay. Are you ready?" But she had the check stubs out, and she said -- I said, "Why are you crying?" And she said -- she said she'd go ahead and get ready, and she'd tell me about it in my car. And I said, "Okay." So she did, and she said that she could no longer trust Sue with her checking account, that she had wrote a check on her, and would I put my name on it. And I said, "Yeah. Sure." But I thought it was just her checking account, which it was at that time. What I did was just the checking account.

\*\*\*

Q. And when you went to the bank that day to have your name put on the account . . . did Ms. Brimer want this to be a joint tenant with right of survivorship or is that something that you suggested?

A. No, I did not suggest it. All I did was -- Bonnie was feeling -- you know, signing the cards and stuff. And, then, she'd push them over to me and I'd sign them, you know. And I didn't -- I didn't know. I did not. In fact, I didn't even know what right of survivorship was.

Q. Did the bank employee not explain --

A. Huh-uh.

Q. -- the different types of --

A. No.

Q. -- accounts to you at that point?

A. No, not at that point.

While there is testimony that Ms. Hennessee did not suggest that the accounts be established as joint accounts with a right of survivorship, this evidence does not negate an essential element of a claim of undue influence for summary judgment purposes. As noted, there are two elements necessary to establish such a claim, i.e., a confidential relationship and a transaction in which the dominant party receives a benefit. A confidential relationship may be either a legal relationship, a family relationship, or any "other" relationship in which one person has dominion and control over another. *Childress*, 74 S.W.3d at 328; *Thompson*, 2009 WL 637289, at \*9. With respect to the this element, the testimony establishes that Ms. Hennessee and Ms. Brimer were close, such that Ms. Brimer trusted Ms. Hennessee with some of her personal financial affairs; this evidence would support, rather than negate, a finding that there was a confidential relationship for purposes of establishing a claim of undue influence. As to the second element, Ms. Hennessee admitted in her answer to the petition that the accounts were set up as a joint account with a right of survivorship and that the funds in the accounts passed to her outside probate; this admission, standing alone, is sufficient to establish, rather than negate, the second element.[3]

---

[3] To the extent the second element is a factual determination, the interrogatory answer of Ms. Hutson in Exhibit 5 establishes that Ms. Hennessee had access to the funds in the accounts and that Ms. Brimer "did not know a lot about finances"; this evidence would support, rather than negate, a finding that Ms.

7

Upon our review of the evidence filed in support of the motion for summary judgment and the statement of material facts, Ms. Hennessee has failed to negate essential elements of Ms. Hutson's claim and, consequently, no burden shifted to Ms. Hutson. Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 265. Summary judgment was not proper on the record presented.

Ms. Hutson also raises an issue with respect to whether mortgage payments made to Ms. Brimer after her death were improperly converted by Ms. Hennessee. Despite Ms. Hutson's assertion in her brief that the court found "that there was not an issue of material fact" on this point, Ms. Hutson did not include this matter into the petition for declaratory relief, it was not mentioned by the parties at the summary judgment hearing, and the trial court did not rule on the issue.[4] As such, the issue presented is not properly before us.[5]

---

Hennessee was conferred a benefit. In any event, the statement in Ms. Hutson's interrogatory answer that Ms. Hennessee induced Ms. Brimer "to create said joint accounts by promising Bonnie Brimer, Victor Ed Clark and myself that the money in those accounts did not belong to Ms. Hennessee and that if Bonnie Brimer passed away Ms. Hennessee would return any money in said joint accounts to myself and Victor Ed Clark" conflicts with her own deposition testimony that she did not believe anyone influenced Ms. Brimer to set up the accounts as joint accounts.

[4] The only time the matter is addressed is in Ms. Huston's Response to the motion for summary judgment, where she includes the following in the Statement of Facts section:

> Prior to Ms. Brimer's death on January 30, 2013, part of Ms. Brimer's income that was being deposited into one or more of the afore-mentioned accounts each month was income from mortgage payments regarding real estate that she was in the process of selling. Said mortgage payments continued to be deposited into one or more of the aforementioned accounts even after Ms. Brimer's death. Upon information and belief of the Plaintiff, Defendants converted all of the monies in the afore-mentioned accounts for their use and benefit several months after Ms. Brimer's death.

Later, in the argument portion of that filing, Ms. Hutson argues:

> Furthermore, there is clearly an issue of material fact as to whether the mortgage payments being paid to Ms. Brimer and that were deposited into one or more of the afore-mentioned accounts after Ms. Brimer's death on January 30, 2013 were part of Ms. Brimer's probate estate and were thus improperly converted by one or both Defendants for their use and benefit, and summary judgment should be denied on this issue as well.

[5] Our remand for further proceedings will allow Ms. Hutson to pursue resolution of the claim.

**IV. CONCLUSION**

For the foregoing reasons, we reverse the grant of summary judgment and remand the case to the chancery court for further proceedings.

_____
RICHARD H. DINKINS, JUDGE